Samuel A. Schwartz, Esq.
3960 Howard Hughes Parkway
Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 990-3628
Facsimile: (702) 866-9774
Pro Se

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAMUEL A. SCHWARTZ, <br>     Plaintiff, <br><br> v. <br><br> ABN AMRO MORTGAGE GROUP, INC. <br> and CITIMORTGAGE INC., <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> )   CASE NO.: 07 C 6963 <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS**

  Samuel A. Schwartz, the Plaintiff in the above captioned matter (the "**Plaintiff**"), hereby responds to the Defendants' Motion to Dismiss (the "**Motion**") and the Memorandum in Support thereof (the "**Memorandum**"), and states as follows:

**Preliminary Statement**

  1. In seeking to defeat the Plaintiff's well-founded claims and avoid liability for improperly charging five years of excessive mortgage interest, the Defendants attempt the old Kansas City Shuffle. Like in the confidence game, Defendants employ misdirection and subterfuge to gain the trust of the "mark", which in this matter is the Court. Indeed, Defendants' Motion and Memorandum: (i) attempt to create agreements among the parties where clearly none exist; (ii) misstate the plain meaning of the Federal and State Statutes applicable here; and (iii) apply unrelated case law. In other words, the Defendants would have the Court look one direction, while the real action (or perhaps more appropriately, the real law), is happening in

-1-

another.

2. On November 16, 2007, the Plaintiff filed a Verified Complaint (the "**Complaint**") in the Circuit Court of Cook County, Illinois County Department, Chancery Division. The Plaintiff filed the Complaint based upon theories of unjust enrichment and related violations of the Illinois Consumer Fraud Act (the "**ICFA**"). Specifically, pursuant to Illinois law, the Defendants failed to meet their contractual and fiduciary duties to the Plaintiff by hiding the payment of a yield spread premium to the mortgage broker responsible for procuring the Plaintiff's home loan. Indeed, the Plaintiff was never told that he could pay an additional $5,811.25 at closing and reduce his interest payments over the loans' first five years. See Plaintiff's Declaration, p. 1, attached hereto as Exhibit A.

3. As set forth in the Complaint, the Defendants failed to make several required disclosures to the Plaintiff in accordance with the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("**RESPA**"), and the Truth In Lending Act, 15, U.S.C. §§ 1601, et seq. ("**TILA**"). The Defendants' failure to comply with RESPA and TILA created State law claims under the ICFA and for unjust enrichment. Importantly, the Illinois Loan Brokers Act requires that all loan brokers provide counterparties with a written contract disclosing the premiums to be paid in connection with a loan. See 815 ILCS 175/15-30. The Defendants did not comply with these Illinois state law requirements, but rather than take the Plaintiff's State law claims head-on, the Defendants seek to go around them with theories of preemption, compliance with Federal law and failures to properly plead. Therefore, the Defendants filed for removal of the Complaint to this Court on the basis that the claims involved a Federal Question. As set forth herein, each of the defenses set forth in the Motion and Memorandum fail on their face, and as much as the Defendants may try to shuffle around the issues, they cannot avoid the Plaintiff's well made claims.

**Standard of Review**

4. A Rule 12(b)(6) motion to dismiss tests a complaint's legal sufficiency, not the

ultimate merits of the case. Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). When ruling on a motion to dismiss, the court considers "whether relief is possible under [any] set of facts that could be established consistent with [the] allegations." Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). A court should dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Centers v. Mortgage, Inc., 398 F.3d 930, 933 (7th Cir. 2005). The court must assume the truth of the facts alleged, construe the allegations liberally, and view all the allegations, as well as any reasonable inferences, in the light most favorable to the plaintiff. Centers v. Mortgage, 398 F.3d at 933. Ambiguities are construed in the plaintiff's favor. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998).

5. While a plaintiff in state court might be required to allege all of the facts essential to recovery under his chosen legal theory, a plaintiff bringing the same claim in federal court needs only to satisfy a notice pleading standard. Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997). This means that, "when federal courts entertain claims under state law ... it is not necessary to plead facts matching elements of legal theories." Christensen v. County of Boone, Illinois, 483 F.3d 454, 466 (7th Cir. 2007). Under the liberal notice pleading standard, a complaint need only include "a short and plain statement of the claim showing [plaintiff] is entitled to relief," and which "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002).

6. In other words, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." Kolupa v. Roselle Park Dist., 438 F.3d 713, 714 (7th Cir. 2006). As the Kolupa decision made clear " '[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain ...' should stop and think: What rule of law requires a complaint to contain that allegation?'" Id. quoting Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005). "Any decision declaring 'this complaint is deficient because it does not allege X'

is a candidate for summary reversal, unless X is on the list in Fed.R.Civ.P. 9(b)." Id. at 715. Breach of contract claims and tortious interference claims do not fall under Rule 9(b). See Fed.R.Civ.P. 9(b) (claims of "fraud or mistake shall be stated with particularity").

7.   As set forth herein, the Complaint meets the standards set forth by Rule 9(b) and promulgated by the Seventh Circuit. Accordingly, the Motion should be denied.

## Argument

**An Express Contract Does Not Exist Among the Parties**

8.   The Defendants argue that an express contract in the form of a mortgage exists among the parties, which controls the issues raised in the Plaintiff's Complaint and bars recovery. Illinois statutory law, however, requires an express contract in connection with any payment made to a mortgage broker, which is the central issue in this matter. The Defendants cannot point to any such contract. Indeed, the Illinois Loan Broker's Act states:

> (a) At the time any person signs a contract for the services of a loan broker, or at the time the loan broker receives any consideration upon the contract, whichever occurs first, the loan broker must provide to the contracting person a written disclosure document . . . .
>
> * * * *
>
> (d) A loan broker shall deliver to any person who proposes to become obligated for a loan an estimated disclosure document if the creditor is required to deliver to the person a disclosure document under the Truth-in-Lending Law, 15 U.S.C. 1601-1667e, for the transaction. The estimated disclosure document shall:
>
>> (1)   Be delivered to the person before the person becomes contractually obligated on the loan; or
>>
>> (2)   Be delivered or placed in the mail to the person not later than 3 business days after the person enters into an agreement with the loan broker whichever occurs first. The estimated disclosure document must contain all the information and be in the form required by the Truth-in-Lending Law, 15 U.S.C. 1601-1667e, and regulations under that Law. However, the annual percentage rate, finance charge, total of payments and other matters required under the Truth-in-Lending Law, 15 U.S.C. 1601-1667e, shall be adjusted to reflect the amount of all fees and charges of the loan

> broker that the creditor could exclude from an estimated disclosure document.

815 ILCS 175/15-30.  The Defendants cannot produce a contract which complies with the Illinois Loan Brokers Act and pre-discloses the yield spread premium Plaintiff paid.  Therefore, the Defendants try to stand on the only paper they have by arguing the mortgage contract among the parties meets the requirements of Illinois law.  This assertion is simply false.  A contract between the Plaintiff and the Defendants' in connection with the yield spread premium paid by the Plaintiff does not exist and as a result, the Defendants were unjustly enriched.

      9.      Similarly, the Plaintiff's assertions of quasi contract, which rise to fill the void created by the Defendants' failure to comply with the Illinois Loan Brokers Act, succeed for the same reasons.  "A quasi contract, or contract implied in law, is one which reason and justice dictate and is founded on the equitable doctrine of unjust enrichment."  Champaign County v. Hanks, 353 N.E.2d 405, 408 (Ill. App. 1976) citing Board of Highway Commissioners v. Bloomington, 97 N.E. 280 (1912).  Illinois law is clear - in order to be successful upon a theory of quasi contract, the Plaintiff needed only prove:

> 1) performance of services;
> 2) the reasonable value of those services; and
> 3) the receipt by the defendant from the plaintiff of a benefit which it would be unjust for him to retain without paying the plaintiff.

O'Neil and Santa Claus, Ltd. v. Xtra Value Imports, Inc., 365 N.E.2d 316 (Ill. App. 1977) citing Nardi & Co., Inc. v. Albastro, 314 N.E.2d 367 (Ill. App. 1974).  Thus, to withstand a motion to dismiss, a complaint alleging quasi contract need only contain "allegations showing the facts and circumstances from which the quasi-contract can be inferred."  Davis v. Green, 1992 WL 168924, *2 (N.D. Ill. 1992) (citations omitted).  As set forth herein, the Defendants bungled their obligation to comply with several laws, both Federal and State when providing the Plaintiff with loan related services.  Due to the relationship of the parties, it was the Defendants' fiduciary duty

to disclose all material facts related to the loan documents, including the reasonable value of those services and especially the yield spread premium. The Defendants in turn accepted excessive interest payments from the Defendant, which gives rise to a quasi contract among the parties. Thus, the assertions needed under Illinois law to survive the Defendants' Motion are present here.

10. In seeking to avoid the Plaintiff's claims of unjust enrichment and quasi contract, and to support their claims of the existence of an express contract, the Defendants site three cases, each of which involves matters unrelated to mortgages. Indeed, the Defendants' cases are inapplicable here as they involve either securities fraud (ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308 (S.D.N.Y. 1997)), credit card fraud (Samuels v. Old Kent Bank, 1997 WL 458434 (N.D. Ill. 1997)) or construction contracts (Klusty v. Taco Bell Corporation, 909 F. Supp. 516 (S.D. Ohio 1995)). Moreover, Illinois law requires an express contract in connection with the Plaintiff's payment of a yield spread premium, and the defendants cannot produce one. Therefore, this argument, and the case law supporting it, fails.

**The Plaintiff's Claims Are Not Timed Barred**

11. The Plaintiff's claims are made first in unjust enrichment. The statute of limitations for claims of unjust enrichment in Illinois is five years. See 735 ILCS 5/13-205. Indeed, Illinois Statutes state:

> actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

735 ILCS 5/13-205. See also Burns Philp Food, Inc. v. Cavalea Continental, 135 F.3d 526 (7th Cir. 1998) (claims of unjust enrichment in the state of Illinois are at law and have a five year statute of limitations). The Plaintiff filed his Complaint approximately six weeks prior to the expiration of the five year limit.

Case 1:07-cv-06963    Document 17    Filed 01/30/2008    Page 7 of 15

12.     In support of their Motion, the Defendants site inapposite cases for their assertions that the Plaintiff's statute of limitations has run.  In <u>Snow v. First American Title Insurance Co.</u>, the Plaintiffs pursued class actions in Mississippi for title insurance payments that were allegedly in violation of the anti-kickback and fee-splitting provisions of RESPA.  332 F.3d 356, 357 (5th Cir. 2003).  The instant case involves unjust enrichment for the payment of yield spread under Illinois law and not title insurance.

13.     Second, the Defendants rely on <u>Jenkins v. Mercantile Mortgage Company</u> for the proposition that the statute of limitations has run in this matter.  231 F. Supp. 2d 737 (N.D. Ill. 2002).  <u>Jenkins</u> is also inapplicable here as the <u>Jenkins</u> plaintiff sought rescission under TILA, not the recovery under state law for unjust enrichment.  In this case, the Plaintiff simply seeks to recover five years of excessive interest payments, not title insurance kick-backs or rescission.  Accordingly, the Motion fails in this regard and should be denied.

**The Defendants Compliance with the Real Estate Settlement Procedures**
**Act Does Not Equate to Compliance With the Truth In Lending Act**

14.     The Defendants begin the Memorandum by arguing that the documents provided to the Plaintiff pursuant to RESPA, specifically the HUD-1 Settlement Statement (the "**HUD-1**"), satisfy the disclosure requirements of TILA.  Simply put, complying with RESPA does not equate to compliance with TILA.

15.      TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer.  See <u>Household Credit Services, Inc. v. Pfeninnig</u>, 124 S.Ct. 1741, 1743 (2004).  Indeed, TILA was designed to create a "system of private attorney generals [sic] to aid its enforcement."  <u>Begala v. PNC Bank, Ohio Nat'l Ass'n</u>, 163 F.3d 948, 950 (6th Cir. 1993); <u>Flesher v. Household Finance Corp.</u>, 640 F.2d 861, 863 (6th Cir. 1981).

16.     Courts applying TILA generally refer to the regulations interpreting the Act, and "unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive...."  <u>Ford Motor Credit Co. v. Milhollin</u>, 100 S.Ct. 790, 797,

-7-

(1980). TILA directs lenders to make certain disclosures to borrowers and provides that the Federal Reserve Board will produce the necessary specific regulation. See 15 U.S.C. §§ 1631, 1632. The Federal Reserve Board promulgated Regulation Z, which requires that disclosures include items such as the amount financed under a loan transaction, as well as clear information about the finance charges, annual percentage rate or variable rate of interest charged by lenders. See 12 C.F.R. § 226.18. In addition, Regulation Z states:

> The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18.

12 C.F.R. § 226.17(a)(1). The Defendants did not clearly and conspicuously disclose the yield spread premium paid by the Plaintiff.

　　　17.　A plain reading of Regulation Z also makes apparent that TILA disclosure requires a lender to provide a borrower with a good faith estimate of the costs of a loan at least three days prior to the consummation of a loan transaction:

> Time of disclosures. In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) the creditor shall make good faith estimates of the disclosures required by § 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

12 C.F.R. § 226.19. Lenders and brokers must issue a "good faith estimate" of the annual percentage rate within three business days after receiving a consumer's written loan application on a purchase-money or construction mortgage. Rose v. SLM Financial Corp., 2007 WL 674319, *3 (W.D.N.C. 2007), citing 12 C.F.R. § 226.19(a)(1). Moreover, "TILA, and the federal regulations promulgated thereunder, extensively regulate the form in which the disclosures are made and restrict the specific language a lender or broker may use therein." Id.

　　　18.　Conversely, RESPA requires that the HUD-1 be made available only one day

-8-

prior to the consummation of a loan transaction:

> The form prescribed under this section shall be completed and made available for inspection by the borrower at or before settlement by the person conducting the settlement, . . . . [u]pon the request of the borrower to inspect the form prescribed under this section during the business day immediately preceding [sic] the day of settlement, the person who will conduct the settlement shall permit the borrower to inspect those items which are known to such person during such preceding day.

12 U.S.C. § 2603.

19.     Importantly, the Defendants' themselves tacitly admit that the HUD-1 executed here does not state that the Plaintiff paid a yield spread premium.  See Memorandum, p. 4.  In fact, the yield spread premium identified on line 809 of the HUD-1 states:

**Deferred Premium pd by ABN to RBC Mtg. Co. (5,811.25)**

A copy of the HUD-1 is attached hereto as Exhibit B.  The yield spread quoted above is not identified with a dollar sign, is not placed into the columns of the HUD-1 as a credit or debit, and was not paid pursuant to a written agreement among the parties, making it deceptive on its face.  Therefore, the Defendants' alleged compliance with RESPA fails to meet the requirements of TILA, in that the HUD-1 was not provided three days prior to consummation of the transaction and the HUD-1 itself failed to clearly identify the yield spread premium.  Finally, the failure of the Defendants to comply with TILA gives rise under in Illinois under the ICFA.

20.     In support of its position that the HUD-1 is sufficient disclosure to comply with TILA, the Defendants rely upon three cases.  The first, Thomas v. Ocwen Federal Bank, FSB, involves an effort of the Plaintiff to extend the statutory periods under TILA and RESPA pursuant to either equitable tolling or fraudulent concealment.  2002 WL 99737, *3 (N.D. Ill. 2002).  The Thomas plaintiff did not set forth a single claim for unjust enrichment or under state law, and six of the eight claims involved alleged RESPA disclosure violations.  As such, the issues in Thomas were not the same as the issues in this case and Thomas does not apply.

21.     Second, the Defendants turn to Parker v. Long Beach Mortgage Company, for the proposition that the HUD-1 is sufficient disclosure in this matter.  2008 WL 53276, *5 (E.D. PA

2008). Much like the Court in Thomas, the issues in Parker centered around alleged RESPA violations, an effort by the plaintiffs to rescind their loans pursuant to section 1635 of TILA, and the Pennsylvania Credit Services Act, not unjust enrichment. Id. at *4. In Parker, the Eastern District of Pennsylvania found that the plaintiffs had received proper notice under TILA, the Defendants complied with RESPA, and that the plaintiffs failed to make a case under the Pennsylvania's Credit Services Act. At no point does the Parker Court consider whether the lenders were unjustly enriched, making Parker inapplicable here as well.

22.     Finally, the Defendants turn to Lanier v. Associates Finance, Inc., for the proposition that compliance with TILA is a defense to liability under the Illinois Consumer Fraud Act. 499 N.E. 2d 440 (Ill. 1986). Lanier involved a class action complaint filed in connection with the use by certain lenders of an arcane practice for computing interest called the Rule of 78's. Id. at 441. The Defendants' own citations, however, make clear that Lanier is not limiting in this case. In Jenkins, cited by the Defendants for the proposition that the Plaintiff's claims are time barred, this Court stated that Lanier only involved the question of whether the ICFA imposed higher disclosure requirements than TILA. 231 F. Supp. 2d at 752. Indeed, the "Illinois Supreme Court in Lanier held only that, where TILA was implicated and the defendant was in compliance, Illinois law does not impose greater disclosure requirements than those mandated by federal law." Id. See also Bernhauser v. Glen Ellyn Dodge, 683 N.E.2d 1194, 1200-01 (Ill. 1997) (taking Lanier "at its word, for the supreme court limited its holding to the case, stating that 'the defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act *in the present case*.*"). As set forth above, the Defendants claims of compliance with RESPA and TILA are misplaced and misstate a plain reading of the Federal statutes and regulations. Indeed, compliance with RESPA does not equate to compliance with TILA.

23.     The Defendants citations also fail to address whether the disclosures made in those cases were timely. Neither Ocwen, Parker nor Lanier considered whether the disclosures

provided by their respective defendants complied with the timing requirements of TILA or more importantly, the ICFA.  Accordingly, <u>Ocwen</u>, <u>Parker</u> and <u>Lanier</u> are not controlling in this matter and the Motion should be denied.

**The Plaintiff Plead His Claims With Particularity**

24.  The Defendants allege in the Memorandum that the Plaintiff failed to plead his ICFA claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  <u>See</u> Memorandum, pp. 7-8.  In order to comply with Rule 9(b), the cases cited by the Defendants state that to make a claim under the ICFA, the Plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  <u>Pace Am., Inc. v. Elixir Indus.</u>, 2007 WL 495302, *4 (N.D. Ill. 2007); <u>Fishman v. Meinen</u>, 2003 WL 444223, *4 (N.D. Ill. 2002).  The Defendants argue the Plaintiff's ICFA claims must fail because the Defendants complied with TILA and RESPA, thereby undermining the ICFA claims. <u>See</u> Memorandum, p. 8.  As outlined above, the Defendants have not proved their compliance with either TILA or RESPA.  Moreover, the Plaintiff has met the Rule 9(b) requirements by demonstrating that:

1. the disclosure of the yield spread premium was insufficient under Illinois law and the HUD-1 fails to clearly and conspicuously state that a yield spread premium was charged or even employ the use of a dollar sign, making it deceptive;

2. the Defendants intended for Plaintiff to rely upon this poor disclosure, insomuch as they never provided the Plaintiff with a written contract setting out the payment of a yield spread premium and the Defendants have accepted excessive interest payments from the Plaintiff since December 27, 2002;

3. the deception occurred prior to, and through the date of the closing of the transaction between the parties;

4. the Plaintiff suffered actual damages; and

5. the damages were the proximate result of the poor disclosures.

Accordingly, the Plaintiff's Complaint is sound on its face.

25. Separately, the Defendants attack the Complaint by asserting that the claims made under the ICFA are time barred. The question of when the Plaintiff's ICFA claims arose is an issue of fact centered around "when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 441 (7th Cir. 1994) quoting Knox College v. Celotex Corp., 430 N.E.2d 976, 980 (Ill. 1981); Midland Management Corp. v. Computer Consoles Inc., 837 F.Supp. 886 (N.D. Ill. 1993) (Posner, J., sitting by designation).

26. The time when a plaintiff knew or should have known that a claim under the ICFA arose is a factual question for this Court to resolve. Highsmith, 18 F.3d at 442. Therefore, the Motion should fail as the Plaintiff's ICFA claims are clear within the meaning of Rule 9(b) and the question of when the statute of limitations began to run is a question of fact for this Court to determine.

**The National Bank Act Specifically Provides For Claims Like the Plaintiff's**

27. In its last argument, the Defendants allege that the Complaint is entirely preempted by the National Bank Act. 12 U.S.C. §§ 1, et seq. Broad review of preemption in this matter is unnecessary, however, as the National Bank Act provides an exception for the claims discussed here. Specifically, the regulations issued in connection with the National Bank Act state:

> State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:
>
>     (1) Contracts;
>     (2) Torts;
>     (3) Criminal law.

12 C.F.R. § 34.4(b). The Supreme Court has consistently recognized that because federal law is generally interstitial, national banks must comply with most of the same rules as their state counterparts. <u>Watters v. Wachovia</u>, 127 S.Ct. 1559, 1574 (2007). Specifically, the Supreme Court made clear that national banks:

> are only exempted from State legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. . . . They are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law. It is only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional.

<u>Id</u>., <u>citing</u> <u>National Bank v. Commonwealth,</u> 9 Wall. 353, 362, 19 L.Ed. 701 (1870).

28.   The Defendants' own citations make clear that the Illinois statutory scheme requiring that mortgage brokers and lenders enter into an express contract with borrowers disclosing the payment of a yield spread premium is consistent with the National Bank Act and not preempted by Federal law. Accordingly, preemption of the Plaintiff's federal claims does not exist here and the Defendants' cannot avoid liability for unjustly enriching themselves over the course of the parties' relationship.

-14-

## **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss in its entirety and grant such other and further relief as this Court deems just and proper.

Dated: January 30, 2008.

                        Respectfully submitted,

                        Samuel A. Schwartz, Esq.
                        3960 Howard Hughes Parkway
                        Suite 500
                        Las Vegas, Nevada 89169
                        Telephone: (702) 990-3628
                        Facsimile: (702) 866-9774


                        By: _/s/_____
                               Samuel A. Schwartz, Esq.

-15-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile, this 30th day of January, 2008, to Jeffery M. Heftman, Vedder Price P.C., Suite 2400, 222 North LaSalle Street, Chicago, IL 60601, facsimile number (312) 609-5005.

/s/_____
Samuel A. Schwartz