IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

SAMUEL A. SCHWARTZ,

        Plaintiff,

v.

ABN AMRO MORTGAGE GROUP, INC.
and CITIMORTGAGE, INC.,

        Defendants.

No. 07 CV 6963

**ABN AMRO MORTGAGE GROUP, INC. AND CITIMORTGAGE, INC.'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**I.      INTRODUCTION**

Nothing in Plaintiff's Response saves his Complaint from dismissal. Plaintiff continues to rely on his baseless claim that AAMG[1] failed to disclose the payment of a yield spread premium ("YSP") to Plaintiff's broker as the sole basis for his claims for quasi-contract and violation of the Illinois Consumer Fraud Act.

But the HUD-1 Settlement Statement (signed by Plaintiff, referred to in the Complaint, attached to both the Motion to Dismiss and Plaintiff's Response, and properly considered on this Motion to Dismiss), shows that the disclosure *was* made. Because this un-refuted fact contained in controlling documents takes precedence over contrary allegations in the Complaint, each of Plaintiff's claims must fail.

In any event, Plaintiff failed to allege the requisite elements of his claims for quasi-contract or show how those claims can survive in light of his written contracts with AAMG.

---

[1] This memorandum is submitted on behalf of both AAMG and Citimortgage, Inc., which is named as a defendant solely in its capacity as successor to AAMG.

Plaintiff admits that he turned to theories of recovery under quasi-contract because his "would be" claims under the Real Estate Settlement Practices Act ("RESPA") and the Truth in Lending Act ("TILA") are barred by their one-year statutes of limitations. See Complaint ¶32 (alleging "[a] quasi contract arose in this matter because absent one, there would be no way to enforce Defendants' legal duties pursuant to RESPA and TILA to the Plaintiff . . "). But Plaintiff alleged no facts to support his quasi-contractual claims and instead relies solely on incorrect legal and factual conclusions. See Compl. ¶¶24-32 (when the payment of a YSP was not disclosed, a quasi-contract arose between the parties) and Compl. ¶¶47-48 (the scheme of charging Plaintiff an undisclosed finance fee and excessive interest unjustly enriched AAMG). These allegations are not sufficient to state a cause of action for quasi-contract.

Plaintiff failed to adequately respond to the legal principle that his quasi-contract claims are barred by the existence of an actual contract between the parties. In his Response, he raises, for the first time, the Illinois Loan Broker's Act (the "ILBA") and argues that AAMG's "noncompliance" with its provisions somehow prevents AAMG from claiming any express contracts exist between the parties. This argument makes no sense. Plaintiff admits, as he must, that he entered into a promissory note and mortgage with AAMG (Compl. ¶8) and that these contracts expressly set forth the interest rate and other terms of his loan with AAMG. Moreover, the ILBA has no application to AAMG.

Plaintiff does not contend that AAMG was his loan broker and acknowledges (as he must) that AAMG was his lender. (Compl. ¶2.) The plain language of the ILBA excludes lenders from its provisions and provides in part:

> "Loan Broker" means any person who, in return for a fee from any person, promises to procure a loan for any person or assist any person in procuring a loan from any third party, or who promises to consider whether or not to make a loan to any person.

2

(b) Loan broker <u>does not include any of the following</u>:

(1) Any <u>bank</u>, savings bank, trust company, savings and loan association, credit union or any other financial institution <u>regulated by any agency of the United States</u> or authorized to do business in this State.

815 ILCS 175/15-5.15.

Further, Plaintiff's claim under the Illinois Consumer Fraud Act fails because there was no violation of either TILA or RESPA. In any event, claims under this Act are barred by its statute of limitation. Finally, all of Plaintiff's state law claims, which are based solely on alleged violation of federal law, are preempted by the National Bank Act ("NBA") and its implementing regulations.

## II.    ARGUMENT

### A.    Plaintiff Cannot Sustain His Claim That There Was a Violation of RESPA or TILA

Plaintiff acknowledges that any claim he may have under TILA or RESPA is barred by their one-year the statutes of limitation. But he claims that violation of these federal statutes gave rise to state law claims that have longer limitations periods (quasi-contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act). It is axiomatic that, if no violation of TILA or RESPA occurred, all of Plaintiff's claims must fail.

#### 1.    Defendants Complied with RESPA

Plaintiff concedes that the HUD-1 Settlement Statement, which he referenced in but failed to attach to his Complaint, should properly be considered together with the Complaint. That document shows that payment of the yield spread premium to Plaintiff's broker was in fact disclosed to Plaintiff at the time of closing.

3

In his Response, Plaintiff does not deny that the disclosure was made, but claims it is insufficient because: (1) it is not accompanied by a dollar sign ($), and (2) it is not identified in columns indicating whether a fee is paid from the sellers' or buyers' funds at closing.

Notably, none of the entries on the Settlement Statement contained the dollar sign symbol. Moreover, at the closing, Plaintiff, an attorney, signed the Settlement Statement and acknowledged that he had "carefully reviewed the HUD-1 Settlement Statement and to the best of [his] my knowledge and belief, it is a true and accurate statement of all receipts and Disbursements made on [his]my account or by [him]me in this transaction." See Memorandum in Support ("Memo"), at Ex. A.

The Settlement Statement, which evidences the disclosure of the yield spread premium, controls over the self-serving and conclusory assertions in Plaintiff's Complaint and Declaration[2]. Thomas v. Ocwen Federal Bank, FSB, No. 01 C 4249, 2002 WL 99737 (N.D. Ill. Jan. 25, 2002) ("[T]he HUD-1 Settlement Statement … belies [plaintiff's allegations that she was unaware of the yield spread premium and that Defendants' concealed its existence from her"). Accordingly, Plaintiff's claim that this alleged violation of RESPA supports any state law claim fails.

## 2.    Defendants Complied with the Truth in Lending Act

In his Response, Plaintiff states that although the disclosure on the HUD-1 may satisfy RESPA, "compliance with RESPA does not equate with compliance with TILA." This statement evidences an incorrect understanding of TILA and its disclosure obligations.

---

[2] Plaintiff's Declaration does not assert that a YSP was not disclosed to him, only that he did not contract with any party concerning such a charge and that he was not advised that lower monthly rates might have been available. The former is rebutted by his own loan documents, and the latter is not of any bearing. The sole issue before the Court is whether the YSP was disclosed.

Pursuant to 12 C.F.R. § 226.18, a lender must disclose the amount financed under a loan, the finance charges, and the annual percentage rate, on a TILA disclosure statement. However, contrary to Plaintiff's claim, TILA does not require that the payment of a yield spread premium be separately disclosed. See Official Staff Interpretation to Regulation Z, 12 C.F.R. § 226, Supp. I, ¶ 4(a)(3)3 ("compensation paid by a creditor to a mortgage broker under an agreement is not included as a separate component of a consumer's total finance charge"); 61 F.R. 26126, 26127 (reporting Federal Reserve Board's conclusion that yield spread premium should not be disclosed as a pre-paid finance charge pursuant to 15 U.S.C. § 1605(a)(6) because it is already included in the interest rate and should not be double counted); In re Escher, 369 B.R. 862, 871 (E.D. Pa. 2007) ("[A] yield spread premium is not required to be separately disclosed because it is already part of the interest component"). Hence, disclosure of the yield spread premium on the HUD-1 Settlement Statement satisfied TILA's disclosure requirements and there is no basis for Plaintiff's claim that TILA was violated.

> 3.    **Defendants Belated Claim Regarding the Good Faith Estimate Is Without Basis**

In his Response, Plaintiff, for the first time, claims that his Good Faith Estimate failed to disclose the payment of a yield spread premium. This belated and unsupported assertion is again rebutted by Plaintiff's own loan documents and cannot otherwise save his claims. See Good Faith Estimate, attached hereto as Ex. A.

The Good Faith Estimate, dated November 25, 2002, over one month before the closing date of the loan, provides an estimate of the yield spread premium as follows:

> "Deferred Premium to RBC MTG CO pd by AAMG (1.125%)
> (p.o.c) 5,230.13.

In any event, even if no disclosure had been made and Plaintiff had alleged this purported nondisclosure violation in his Complaint (which he did not), this claim would not support a

private cause of action against Defendants. See Collins v. FMHA-USDA, 105 F.3d 1366, 1367-68 (11th Cir. 1997) (holding that no private cause of action exists for allegedly deficient good faith estimates of closing costs). Moreover, even if a private cause of action existed, it would be time-barred as Plaintiff would have known of the alleged deficiency at (or even before) his closing on December 27, 2002. See Snow v. Mississippi Title Ins. Co., 332 F.3d 356, 359 (5th Cir. 2003).

**B.     Plaintiff's Claims for Quasi-Contract and Unjust Enrichment Must be Dismissed**

Because Plaintiff's claims under theories of quasi-contract and unjust enrichment are dependent on a finding that AAMG violated RESPA and/or TILA, they fail for reasons stated above, i.e. there was no violation of these statutes.

These claims also fail because the facts and allegations of the Complaint do not support the requisite elements of these claims and Plaintiff's contracts with AAMG (i.e., note and mortgage) preclude such claims.

To recover on a quasi-contractual claim, a plaintiff must show that the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should make restitution. Lirtzman v. Fuqua, 677 F.2d 548, 553 (7th Cir. 1982). No facts are alleged to support such a claim against AAMG.[3] Instead, Plaintiff attempts to state a cause of action for quasi-contract by relying on incorrect and unsupported legal conclusions. See Compl. ¶25 ("by reason of the relationship of the parties and the existence of an obligation by Defendants to Plaintiff to disclose all material facts related to the loan documents, a quasi contract arose between the parties"); Compl. ¶31 ("due to the

---

[3]   Plaintiff alleges separate claims for quasi-contract (Count I) and unjust enrichment (Count III). However, they are treated as one claim here.

relationship of the parties, it was the Defendants' fiduciary duty to disclose all material facts related to the loan documents"); Resp. at pp. 5-6 ("it was Defendants' fiduciary duty to disclose all material facts related to the loan documents").

First, there is no basis for a finding that appropriate disclosures were not made. Second, it is well established that no fiduciary relationship arises between a lender and borrower. Pommier v. Peoples Bank Marycrest, 967 F.2d 1115, 1119 (7th Cir. 1992); Graham v. Midland Mortg. Co., 406 F. Supp. 2d 948, 953 (N.D. Ill. 2005). Thus, "a lender is not considered a fiduciary of its borrower." Choi v. Chase Manhattan Mortg. Co., 63 F. Supp. 2d 874, 884 (N.D. Ill. 1999); Stern v. Great Western Bank, 959 F. Supp. 478, 487 (N.D. Ill. 1997); see also McErlean v. Union Nat. Bank of Chicago, 90 Ill. App. 3d 1141, 1148-49, 414 N.E.2d 128, 134 (1st Dist. 1980) ("There is nothing inherent in the borrower-lender relationship that gives rise to a fiduciary duty."); Spungen v. Forman, No. 06 C 5974, 2007 WL 1114053, at *3 (N.D. Ill., April 9, 2007) ("A mortgagee is not the agent or fiduciary of the mortgagor, notwithstanding the mortgagee's ability to affect the legal relations of the mortgagor.").

Third, no facts are alleged to support a finding that the payment of the yield spread premium to Plaintiff's broker enriched AAMG in any way or that in good conscience AAMG should make restitution. The legality of yield spread premium's is specifically addressed by RESPA and the HUD Policy Statements interpreting RESPA. There is not even an inference in the Complaint that under the facts of this case, the actual payment of the YSP was illegal. Plaintiff does not suggest that his broker did not provide him with appropriate services or that his broker's total compensation was unreasonable. Instead, he claims merely that the payment was not disclosed. No facts are alleged to support a finding that the payment of the yield spread premium to the broker unjustly enriched AAMG.

As was pointed out in AAMG's opening brief, even if Plaintiff had stated a claim for quasi-contract against AAMG, the claim could not stand because an express contract exists between the parties. In his Response, Plaintiff attempts to distinguish authority relied on by AAMG for this proposition by pointing out that those cases arose in factually different contexts. But this black letter law has application in any context in which a contract covers the subject matter of a party's quasi-contractual claim. See ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1333-34 (S.D.N.Y. 1997) ("Unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists"); Samuels v. Old Kent Bank, No. 96 C 6667, 1997 WL 458434, at *14-15 (N.D. Ill., Aug. 1, 1997) (dismissing unjust enrichment count on basis of plaintiff's acknowledgment of the existence of a contract and holding that Rule 8(e)(2) did not permit plaintiff to plead breach of contract and unjust enrichment as alternative legal theories); Klusty v. Taco Bell Corp., 909 F. Supp. 516, 521 (S.D. Ohio 1995) (alleged express contract precluded plaintiff from pleading alternative claims for unjust enrichment and breach of contract).

In any event, in Perez v. Citicorp. Mortgage, Inc., 301 Ill. App. 3d 413, 425, 703 N.E.2d 518, 526 (1st Dist. 1998), the court examined the unavailability of a quasi-contractual claim in the context of a lender and borrower. The court held that a claim for quasi-contract against a lender for the collection of property mortgage insurance payments and the alleged failure to disclose that those payments could be minimized or terminated, could not stand when a contract, i.e., the mortgage, existed between the parties. Id.

The facts at bar lead to the same conclusion. Here, Plaintiff entered into a contract with AAMG in which he agreed to pay certain principal, interest and fees over the duration of his

mortgage. His claims for quasi-contract and unjust enrichment relate to the very same subject of the contract, i.e., his payment of a certain rate of interest and fees. His quasi-contractual claims fail in the face of the written note and mortgage.

### C.    Plaintiff's Claim for Violation of the Illinois Consumer Fraud Act Fails

#### 1.    The Consumer Fraud Act Claim is Time Barred

Plaintiff responds to AAMG's showing that his Consumer Fraud Act claim is untimely because it was not brought within three years of the claim's accrual by arguing that the question of when his claim arose is a question of fact not ripe for resolution. Resp. p. 12 at ¶ 25. Plaintiff is incorrect. By his own Complaint, and the loan documents that must be deemed to be a part thereof, Plaintiff has plead himself out of court.

Both Jenkins v. Mercantile Mortgage Co., 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002) and Snow v. First American Title Ins. Co., 332 F. 3d 356, 359-60 (5th Cir. 2003), demonstrate that RESPA and TILA claims accrue as of the date of the loan closing. Schwartz does not dispute that his Consumer Fraud Claim is premised upon alleged violations of these federal statutes. Accordingly, his claim under the Consumer Fraud Act began to accrue on the date of his loan closing.

In his Complaint, Plaintiff admits that his loan closed on December 27, 2002. Compl. ¶8. The Settlement Statement, signed by Plaintiff at closing, discloses the payment of the yield spread premium, putting Plaintiff on notice of his claimed injury. See Thomas v. Ocwen Federal Bank, FSB, No. 01 C 4249, 2002 WL 99737 (N.D. Ill. Jan. 25, 2002) ("[T]he HUD-1 Settlement Statement … belies [plaintiff's allegations that she was unaware of the yield spread premium and that Defendants' concealed its existence from her." and party who reads and signs a disclosure while asking no questions cannot be deemed to have acted diligently in attempting

to discover claim); see also Parker v. Long Beach Mort. Co., No. 06-2002, 2008 WL 53276 at *
5 (E.D. Pa. Jan. 3, 2008) (properly disclosed yield spread rebuts claim of non-disclosure).

Plaintiff's attempt to distinguish Thomas and Parker is without merit. Plaintiff contends
that neither case addressed a claim for unjust enrichment.[4]  This argument is completely
irrelevant, as the authority is cited in support of a finding that the Consumer Fraud Act claim,
premised on federal law claims arising from non-disclosure, is time barred. In fact, both cases
are controlling, as in both cases, just as in the case at bar, the plaintiffs attempted to extend an
expired limitations period in the face of a document which indisputably put them on notice of a
claim, thereby rebutting any assertion of concealment.

2.    **AAMG's Compliance with RESPA and TILA Serves as an Absolute
Defense to the Consumer Fraud Claim**

Even if his claim were timely, which it is not, AAMG's compliance with both RESPA
and TILA constitutes an absolute defense to Plaintiff's Consumer Fraud Claim. It is undisputed
that the yield spread premium was disclosed to Schwartz in both his Settlement Statement and
Good Faith Estimate. See Memo at Ex. A thereto and Ex. B hereto. Because AAMG's
disclosures satisfied both RESPA and TILA, Plaintiff's Consumer Fraud Claim must fail. Lanier
v. Assoc. Fin., Inc., 114 Ill. 2d 1, 499 N.E.2d 440, 447 (Ill. 1986) ("the defendant's compliance
with the disclosure requirements of the Truth in Lending Act is a defense to liability under the
Illinois Consumer Fraud Act").

_____

[4] AAMG argued that Count II alleging violation of the Consumer Fraud Act, subject to a
three-year statute of limitations, was time barred. See Memo, p. 5, at III(B)(1). In response,
Schwartz contends that the five-year statute of limitations for his unjust enrichment is not time
barred. This argument is wholly non-responsive. AAMG did not contend that Schwartz's unjust
enrichment claim was time barred, but rather that it failed to state a claim for other reasons
discussed herein.

3.   **The Consumer Fraud Claim is Not Plead with Particularity**

Plaintiff did not satisfy the heightened pleading requirement of Rule 9(b).  [F]or nearly two decades our Court of Appeals has reiterated from time to time that the Rule 9(b) pleading requirement of "particularity" as to the "circumstances constituting fraud" calls for the equivalent of a cub reporter's directive for the lead paragraph in a newspaper story: the "who," "what," "when" and "how."  See ADM Investor Services, Inc. v. Ramsay, No. 06 C 6539, 2008 WL 216376, at *2 (N.D. Ill Jan. 25, 2008); see also DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990).  Plaintiff's consumer fraud claim does not identify the party who allegedly failed to make the requisite disclosure or when the alleged non-disclosure occurred.  It fails for this independent reason.

D.   **Plaintiff's State Law Claims are Preempted by the National Bank Act**

Plaintiff's sole argument in response to Defendants' contention that his state law claims are preempted is an apparent misunderstanding of 12 C.F.R. § 34.4(b).  Plaintiff argues that 12 C.F.R. 34.4(b) provides that state laws, such as those arising in contract, tort or criminal law, apply to national banks to the extent that they only "incidentally affect the exercise of national banks' real estate lending powers."  But Plaintiff does not dispute that at the core of his three-count complaint are assertions that he did not receive adequate loan disclosures and was charged excessive interest as a result.  Such claims more than incidentally affect a national bank's lending powers.

Nor can Plaintiff dispute that 12 C.F.R. 34.4(a) preempts state laws as follows:

> [S]tate laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks.  Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.2, without regard to state law limitations concerning:

\*\*\*

11

(9) Disclosure and advertising, including laws requiring specific statements, information or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;

(10)  Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

*** 

(12)  Rates of interest on loans.

12 C.F.R. § 34.3(a).

It is the substance of Plaintiff's claims, not their label, that renders them subject to preemption. Austin, No. Civ. A. 4:04 CV 33 P B, 2005 WL 1785285, at *6 (N.D. Miss. July 26, 2006) provides guidance here.  In Austin, the plaintiffs alleged that Provident Bank made loans to the plaintiffs that charged "excessive, improper and fraudulent fees," and broker fees that were not disclosed.  Id. at *1. The Austin plaintiffs alleged that this supported a number of state law causes of action, including unjust enrichment, breach of good faith and fair dealing, violation of a state consumer protection act and breach of fiduciary duty.  Id.  The court found that, despite the fact that the plaintiffs' claims were couched in state tort and contract law, the claims were preempted by the NBA and OCC regulations. Id. at *6.  Specifically, the court found that plaintiff's claim of non-disclosure, while couched as state law claims, was preempted under 12 C.F.R. 34.3, as follows:

> For example, subsection (a)(9) covers 'disclosures in credit-related documents, including information to be included in credit applications and other credit-related documents.'  This relates to the plaintiffs' claims that the defendants procure false, fraudulent, and inaccurate documentations concerning the plaintiffs' mortgage loan applications and that the defendants provided the loan closing attorneys with false and/or misleading data from which the loan documents were prepared.

The <u>Austin</u> court recognized that 12 C.F.R. 34.4(b) exempts only those state laws from preemption which "only incidentally affect the exercise" of a national banks' powers.  However, the court held that to allow a plaintiff to craft state law claims based on the substantive matters identified in 12 C.F.R. 34.4(a) "would not result in an incidental effect upon the exercise of a national bank's real estate lending powers" but rather "would circumvent preemption of the National Bank Act and aforementioned regulations promulgated by the OCC." <u>Id.</u> at * 6.

Finally, Plaintiff's reliance on the dissent in <u>Watters v. Wachovia Bank, N.A.</u>, 127 S.Ct. 1559, 1574 (2007) is misplaced.  The dissent observed only that Congress has not immunized national banks from complying with nondiscriminatory state laws regulating brokers and lenders.  Here, Plaintiff raises state law claims which are solely rooted in substantive areas of law which have been expressly preempted.  Such claims are preempted. <u>See</u> 12 C.F.R. 34.4(a).

## III. CONCLUSION

For the foregoing reasons and as further stated in Defendants' ABN AMRO Mortgage Group, Inc. and Citimortgage, Inc.'s motion and memorandum in support of their motion to dismiss, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff Samuel Schwartz's Complaint with prejudice in its entirety.

DATED: February 29, 2008                    Respectfully submitted,

ABN AMRO MORTGAGE GROUP, INC.
AND CITIMORTGAGE, INC.


By:   s/ Jeffrey M. Heftman
                    One of Their Attorneys

Diane M. Kehl
Jeffery M. Heftman
Vedder Price, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
(312) 609-7500
Fax:  (312) 609-5005

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2008, I electronically filed the foregoing **ABN AMRO Mortgage Group, Inc. and Citimortgage, Inc.'s Reply Memorandum in Further Support of their Motion to Dismiss** with the Clerk of the Court using the CM/ECF system and have served same on:

>
> Samuel A. Schwartz, Esq.
> 3960 Howard Hughes Parkway
> Suite 500
> Las Vegas, Nevada 89169

via facsimile transmission and by depositing the same in the U.S. mail, first-class postage prepaid, at 222 North LaSalle Street, Chicago, Illinois 60601-1003 by 5:00 p.m. on February 29, 2008.

>
>
> s/ Jeffery M. Heftman
> Jeffery M. Heftman